IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MONICA LANEE JONES,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA SUSSEX CORPORATION d/b/a Marriott Savannah Riverfront; COLUMBIA PROPERTIES SAVANNAH, LLC d/b/a Marriott Savannah Riverfront; COLUMBIA SUSSEX MANAGEMENT LLC; CRESTVIEW MANAGEMENT, LLC; and MARRIOTT INTERNATIONAL, INC.;<br><br>Defendants. | : | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff MONICA LANEE JONES files this complaint against Defendants COLUMBIA SUSSEX CORPORATION d/b/a Marriott Savannah Riverfront; COLUMBIA PROPERTIES SAVANNAH, LLC d/b/a Marriott Savannah Riverfront; COLUMBIA SUSSEX MANAGEMENT LLC; CRESTVIEW MANAGEMENT, LLC; and MARRIOTT INTERNATIONAL, INC.

**JURISDICTION, VENUE AND PARTIES**

1.

This is a tort action based on the laws of the State of Georgia. Plaintiff's claims

are based on the defendants' acts, omissions, and conduct in committing and/or causing a false arrest, false imprisonment, malicious prosecution, negligence, breach of a legal duty to a business invitee, breach of contract, and intentional infliction of emotional distress.

2.

Plaintiff MONICA LANEE JONES ("Plaintiff") is an adult female citizen of the United States and a legal resident of the State of Michigan.

3.

Defendant COLUMBIA SUSSEX CORPORATION d/b/a Marriott Savannah Riverfront ("CS Corp.") is a foreign corporation for profit created under the laws of the State of Kentucky. This defendant has its principal office in the State of Kentucky and is registered to conduct business in the State of Georgia. This defendant may be served with process through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

4.

Defendant COLUMBIA PROPERTIES SAVANNAH, LLC d/b/a Marriott Savannah Riverfront ("CPS") is a foreign corporation for profit created under the laws of the State of Delaware. This defendant has its principal office in the State of Kentucky and is registered to conduct business in the State of Georgia. This

defendant may be served with process through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

5.

Defendant CRESTVIEW MANAGEMENT, LLC ("Crestview Management") is a foreign corporation for profit created under the laws of the State of Kentucky, has its principal office in the State of Kentucky, and is registered to conduct business in the State of Georgia. This defendant may be served with process through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

6.

Defendant COLUMBIA SUSSEX MANAGEMENT LLC ("CS Management") is a foreign corporation for profit created under the laws of the State of Kentucky. This defendant has its principal office in the State of Kentucky, and is registered to conduct business in the State of Georgia. This defendant may be served with process through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

7.

Defendant MARRIOTT INTERNATIONAL, INC. ("Marriott") is a foreign

corporation for profit created under the laws of the State of Delaware. This defendant has its principal office in the State of Maryland and is registered to conduct business in the State of Georgia. This defendant may be served with process through its registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

8.

At all relevant times, Defendants jointly operated, managed, and conducted business as the Marriott Savannah Riverfront ("MSR hotel"), a hotel located at 100 General McIntosh Blvd., Savannah, Chatham County, Georgia 31401 that leases guest rooms to the general public.

9.

At all relevant times, CS Corp. owned the MSR hotel and leased guest rooms to the general public.

10.

At all relevant times, CPS owned the MSR hotel and leased guest rooms to the general public.

11.

At all relevant times, Crestview Management contracted and received compensation to employ and manage staff at the MSR hotel.

12.

At all relevant times, CS Management contracted and received compensation to employ and manage the staff at the MSR hotel.

13.

At all relevant times, Marriott managed and operated a hotel room reservation system for hotels owned by Marriott and other hotels franchised by Marriott (jointly referred to as "Marriott hotels").

14.

The MSR hotel operates as one of the Marriott hotels. Based on the franchise agreement, Marriott maintained a financial interest in profits of the MSR hotel and Marriott received payments for reserving guest rooms at the MSR hotel.

15.

At all relevant times, Defendants were individually and jointly responsible for establishing, implementing, and enforcing hotel staff responsibilities, duties, practices, policies, and procedures at the MSR hotel.

16.

Plaintiff is asserting state law claims against the defendants in this civil action. The opposing parties in this legal action include citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

17.

The parties and claims in this legal action are all subject to the jurisdiction of this Court based on diversity of citizenship and pursuant to 28 U.S.C. § 1332.

18.

The acts, omissions, and events referred to herein occurred or were committed in the State of Georgia. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and N.D.Ga. Local Rule 3.1(B).

## BACKGROUND FACTS

19.

Plaintiff is a career educator employed by the Detroit Public Schools in Michigan for more than 28 years. Plaintiff will be eligible to retire with a full pension and benefits in August 2025 after 30 years of service.

20.

Plaintiff is a member of the Alpha Kappa Alpha (AKA) sorority. Plaintiff reserved hotel rooms to attend AKA conferences scheduled in other states.

21.

Marriott created Marriott Rewards and Marriott Bonvoy membership accounts to provide benefits and services to hotel guests who returned to Marriott hotels. Marriott changed Marriott Rewards accounts to Marriott Bonvoy accounts.

22.

Plaintiff obtained and used a Marriott Rewards and Marriott Bonvoy account membership to reserve hotel guest rooms for herself and occasionally extra rooms for her sorority sisters. Plaintiff was allowed to transfer hotel rooms to other AKA sorority members who then accepted the reservations and paid for the hotel rooms.

23.

In July 2018, Plaintiff used her Marriott Rewards account to reserve three (3) hotel guest rooms at the Residence Inn Marriott, one of the Marriott hotels in Houston, Texas. Plaintiff transferred a guest room to Pamela Daniels ("Daniels"), a sorority sister who paid for the hotel room with her own credit card.

24.

Plaintiff continued to use her Marriott Rewards and Marriott Bonvoy accounts and personal finances to reserve and pay for guest rooms at Marriott hotels.

25.

On July 28, 2021, Plaintiff used "hotels.com" to reserve a guest room for a family research project and a vacation at the MSR hotel.

26.

On August 13, 2021, Plaintiff checked into a guest room at the MSR hotel and used her DFCU credit card to pay $1,061.91 for the reserved guest room.

27.

Plaintiff learned that she would not receive Marriott Bonvoy benefits because the MSR hotel guest room was booked through hotels.com.

28.

In August 2021, Tiffani Mihalich ("Mihalich") was a hotel desk clerk at the MSR hotel acting within the scope of her employment and duties as an employee and agent of each defendant.

29.

On August 13, 2021, Mihalich advised Plaintiff that she could receive benefits by cancelling the hotels.com reservation and booking her guest room through the Marriott reservation system. Plaintiff complied with this procedure and confirmed a new Marriott reservation so that Mihalich could cancel the hotels.com reservation.

30.

Plaintiff told Mihalich to charge the MSR hotel fees for the new reservation on the same DFCU credit card that Plaintiff initially used to pay for the room.

31.

Defendants erroneously connected Plaintiff's new room reservation to the credit card account Daniels used to pay for a guest room three (3) years earlier in Texas. Defendants charged Daniels' credit card account for Plaintiff's guest room.

32.

Daniels promptly complained to the MSR hotel manager, Tinequa Holcombe, about this unauthorized charge that appeared on Daniels' credit card account.

33.

The MSR hotel staff promptly contacted the Savannah Police Department (SPD). The MSR hotel manager informed SPD officers that Plaintiff was engaged in a fraudulent transaction at the MSR hotel.

34.

The MSR hotel manager put a "management lockout" on the guest room so Plaintiff could not enter the room. Plaintiff was compelled to go to the hotel lobby to inquire about why her key no longer opened the door to her guest room.

35.

After Plaintiff came down to the public lobby of the hotel, she was confronted and detained by several SPD officers.

36.

Plaintiff did not know, and could not explain, why her guest room was charged to a credit card account that belonged to another person. At the time, Plaintiff did not know that the credit card account belonged to Daniels.

37.

Defendants and the MSR hotel staff members failed to identify or correct the reservation error in booking Plaintiff's guest room. Instead, Mihalich falsely claimed that Plaintiff gave a verbal instruction to charge her guest room on the credit card account that belonged to Daniels.

38.

Plaintiff insisted that she only instructed the desk clerk to use the same credit card that Plaintiff initially used to pay for the guest room. There was no rational explanation for the MSR hotel to charge the guest room to a credit card that Plaintiff did not possess, was not in Plaintiff's name, and was not connected to the DFCU account that Plaintiff initially used to pay for the guest room.

39.

SPD officers detained and questioned Plaintiff in the MSR hotel lobby.

40.

The MSR hotel staff convinced the SPD officers that Plaintiff fraudulently used Daniels' credit card account. The SPD officers arrested Plaintiff, escorted her through the MSR hotel lobby, then deposited her in the back seat of a police car.

41.

At a police station, Plaintiff was interrogated again about the alleged fraud.

Plaintiff could not explain why the MSR hotel connected Plaintiff's guest room reservation to an unidentified credit card account.

42.

SPD officers charged Plaintiff with Identity Theft and Financial Transaction Card Fraud as felony offenses that violated criminal statutes in Georgia.

43.

Plaintiff was transported to the Chatham County Jail, where she was booked, photographed, strip-searched, and required to wear inmate attire. Plaintiff's new cell phone was seized, retained, and searched by the police for incriminating evidence.

44.

Plaintiff remained incarcerated in the jail overnight. The next day, Plaintiff was taken to court for a bond hearing and released on a $1,000 bail bond.

45.

On September 7, 2021, the Detroit Public Schools suspended Plaintiff from her employment without pay pending a resolution of the felony charges.

46.

On December 21, 2021, the Chatham County District Attorney dismissed both criminal charges against Plaintiff "for good cause" after a criminal investigation. No formal arrest warrant, accusation, or indictment was issued against Plaintiff.

**COUNT ONE: FALSE ARREST & FALSE IMPRISONMENT**

47.

Based on the false allegations and omissions of Defendants, Plaintiff was detained, arrested, imprisoned, and charged with Identity Theft and Financial Transaction Card Fraud as felony criminal offenses.

48.

There was no probable cause for the arrest, imprisonment, or prosecution of Plaintiff for these criminal offenses. No judicial officer ever determined whether there was probable cause for a criminal prosecution of Plaintiff, except search warrants were granted for a police investigator based on judicial findings of probable cause without Plaintiff's knowledge or participation.

49.

Defendants initiated, facilitated, and pursued the arrest, imprisonment, and criminal prosecution of Plaintiff by providing false information to police officers.

50.

Defendants initiated, facilitated, and pursued the arrest, imprisonment, and criminal prosecution of Plaintiff by falsely and maliciously:

a) misrepresenting Plaintiff's instruction to place the charge for her Marriott Bonvoy guest room reservation on the same DFCU credit card

that Plaintiff initially used to pay for her hotels.com reservation;

b) disregarding Plaintiff's status as a Marriott Bonvoy member and her explanation that she only used her own credit account;

c) failing to identify Defendants' own error in connecting Plaintiff's guest room reservation to Daniels' credit card account;

d) presuming that Plaintiff was engaged in a fraudulent credit card account transaction instead of identifying and correcting Defendants' error; and

e) providing the police with false information about Plaintiff's conduct.

51.

After Plaintiff was arrested and imprisoned, Defendants continued to promote and facilitate a criminal prosecution of Plaintiff without investigating, identifying, or correcting Defendants' own billing error.

52.

The criminal prosecution of Plaintiff was fully terminated in her favor without a valid warrant, accusation, indictment, or summons being issued.

53.

Defendants are all individually and jointly liable to Plaintiff for damages caused by this false arrest and false imprisonment.

**COUNT TWO: MALICIOUS PROSECUTION**

54.

If Plaintiff was criminally prosecuted within the meaning of O.C.G.A. § 51-7-40, then the prosecution was malicious. Defendants are all individually and jointly liable to Plaintiff for damages caused by this malicious prosecution.

**COUNT THREE: NEGLIGENCE & NEGLIGENCE PER SE**

55.

Defendants were negligent in:

a) misrepresenting Plaintiff's instruction to place the charge for her Marriott Bonvoy guest room reservation on the same DFCU credit card that Plaintiff initially used to pay for her hotels.com reservation;

b) disregarding Plaintiff's status as a Marriott Bonvoy member and her explanation that she only used her own credit account;

c) failing to identify Defendants' own error in connecting Plaintiff's guest room reservation to Daniels' credit card account;

d) presuming that Plaintiff was engaged in a fraudulent credit card account transaction instead of identifying and correcting Defendants' error; and

e) providing the police with false information about Plaintiff's conduct.

56.

Defendants negligently, wantonly, and intentionally distorted facts and fabricated allegations to initiate, promote, and facilitate the arrest, incarceration, and criminal prosecution of Plaintiff.

57.

Defendants violated a Georgia criminal statute, O.C.G.A. § 16-10-26, by falsely reporting that Plaintiff engaged in Identity Theft and Financial Transaction Card Fraud as felony and criminal offenses. Defendants were negligent *per se* based on their acts and omissions in falsely reporting these crimes.

58.

Defendants are all individually and jointly liable to Plaintiff for damages caused by Defendants' negligence, including their negligence *per s*e.

**COUNT FOUR: HOTEL BREACH OF DUTY**

59.

Defendants invited the general public to enter the MSR hotel to transact business and lease hotel rooms. Plaintiff lawfully entered the MSR hotel as a business invitee of Defendants.

60.

Defendants had a duty to protect Plaintiff and to provide Plaintiff with a

private hotel room as a business invitee. Defendants also had a duty to protect Plaintiff from false allegations that she committed criminal offenses that resulted in an arrest of Plaintiff that denied her access her hotel room.

61.

Defendants failed to implement appropriate rules, policies, practices, and procedures at the MSR hotel to assure that Plaintiff would occupy a safe, private hotel room without being subject to an arrest and removal from the premises.

62.

Defendants were responsible for training, supervising, disciplining, hiring, firing, and managing hotel employees, agents, and staff at the MSR hotel.

63.

Defendants failed to adequately and properly train and supervise hotel employees, agents, and staff at the MSR hotel. Hotel employees, agents, and staff (specifically including a hotel desk clerk and a hotel manager) were inadequately trained and supervised in performing their respective duties toward Plaintiff.

64.

Defendants failed to adopt, implement, or utilize appropriate supervisory, training, and disciplinary measures and procedures to prevent the tortious acts and omissions of the hotel staff that caused the arrest and incarceration of Plaintiff.

65.

Defendants breached their legal duty to protect Plaintiff and to avoid making false allegations that jeopardized Plaintiff's personal security and her ability to occupy the guest room that she leased at the MSR hotel.

66.

Defendants are all individually and jointly liable to Plaintiff for damages caused by this breach of duty to a business invitee.

**COUNT FIVE: BREACH OF CONTRACT**

67.

In August 2021, Plaintiff entered into a binding lease agreement and contract with Defendants. Pursuant to this contract, Plaintiff extended her lease of a private hotel guest room at the MSR hotel.

68.

As consideration for the contract, Plaintiff agreed to pay and paid Defendants a monetary fee to lease a private hotel room at the MSR hotel from August 13, 2021 until August 16, 2021.

69.

Defendants agreed to accept Plaintiff's payment and assigned Plaintiff to a specific guest room. Plaintiff accepted the assigned room in the MSR hotel.

70.

Plaintiff detrimentally relied on her contract with Defendants to lease a private hotel room at the MSR hotel so that Plaintiff could sleep in the guest room and enjoy her stay at the MSR hotel.

71.

Defendants breached their contract with Plaintiff by invalidating her guest room key and initiating an arrest of Plaintiff that forcibly removed her from the hotel on August 15, 2021 and prevented her from occupying her guest room.

72.

Defendants are all individually and jointly liable to Plaintiff for damages caused by this breach of contract.

**COUNT SIX:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

73.

Defendants' initiation and pursuit of the arrest and incarceration of Plaintiff naturally caused her to experience such intense feelings of humiliation, embarrassment, fright, and extreme outrage as to cause severe emotional distress.

74.

Defendants are all liable to Plaintiff for outrageous conduct that caused an intentional and reckless infliction of emotional distress.

**INJURIES & DAMAGES**

75.

Plaintiff had never been arrested for any criminal offense prior to August 15, 2021, when she was arrested at the MSR hotel. Plaintiff was traumatized by the false accusations, arrest, incarceration, and resulting damage to her career and reputation.

76.

Plaintiff retained a criminal defense attorney to challenge the criminal prosecution and an employment law firm to challenge the suspension without pay.

77.

A professional counselor confirmed that Plaintiff experienced such “high anxiety” and “deep depression” that she developed a post-traumatic stress disorder (PTSD). Plaintiff was granted medical leave to seek mental health care and recover her psychological stability.

78.

Defendants’ conduct caused Plaintiff to experience pain, suffering, physical discomfort, and emotional trauma, specifically including shock, fright, humiliation, anxiety, mental anguish, and humiliation.

79.

Defendants’ conduct caused Plaintiff to suffer financial losses, expenses, and

damages that included a loss of income, a loss of employment benefits, a hotel fee, a bail bond fee, attorney's fees, and legal expenses.

80.

Defendants' conduct caused Plaintiff to lose the benefit of a leased hotel room, social interaction with her peers, and professional networking.

81.

As a result of Defendants' conduct, Plaintiff was deprived of her liberty and jeopardized by facing the potential consequences of a criminal felony conviction that included imprisonment, loss of employment, and loss of retirement benefits.

82.

The tortious conduct, acts, omissions, motives, and intent of Defendants constitute aggravating circumstances for which Plaintiff should recover additional, punitive, and exemplary damages from Defendants.

83.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to recover her attorney's fees, court costs, and litigation expenses in this action from Defendants pursuant to O.C.G.A. § 13-6-11 and any other applicable provisions of law.

**WHEREFORE**, Plaintiff MONICA LANEE JONES prays for a TRIAL BY JURY and an award of the following damages and relief from Defendants:

(a) Actual and compensatory damages in excess of $75,000;

(b) Additional, exemplary, and punitive damages; and

(c) Litigation expenses, costs, and reasonable attorney's fees that Plaintiff incurs related to this civil action; and

(d) Such other and further relief as the Court deems just and proper.

/s/ James W. Howard
James W. Howard
Georgia Bar No. 370925
jhoward@howardfirm.com

/s/ Sharon Effatt Howard
Sharon Effatt Howard
Georgia Bar No. 371275
showard@howardfirm.com

/s/ Leif A. Howard
Leif A. Howard
Georgia Bar No. 132778
lhoward@howardfirm.com

ATTORNEYS FOR PLAINTIFF

THE HOWARD LAW FIRM, P.C.
Suite 200, Kyleif Center
1479 Brockett Road
Tucker, Georgia 30084
(770) 270-5080
(770) 270-5033 (fax)